# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LAKEATHA LANIER,<br><br>    Plaintiff,<br><br>v.<br><br>PHH MORTGAGE CORP., U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, SUCCESSOR IN INTEREST TO BANK OF AMERICA, NATIONAL ASSOCIATION, AS TRUSTEE, SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR RESIDENTIAL ASSET MORTGAGE PRODUCTS, INC., MORTGAGE ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2007-RP4,<br><br>    Defendants. | CIVIL ACTION NO. 1:21-cv-10692-JGD |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The plaintiff, Lakeatha Lanier ("Plaintiff"), has not made a mortgage payment since 2015. Despite this fact, she asks that the court declare certain pre-foreclosure notices sent to her in 2018 and 2019 "be null and void," and that the Defendants be enjoined from conducting a foreclosure or conveying the mortgaged property. The Defendants are entitled to judgment in their favor on all counts of the complaint where the two pre-foreclosure notices at issue comply with Massachusetts law and there is no basis to support Plaintiff's claims that they failed to strictly comply with the mortgage or the power of sale statute. Indeed, the Plaintiff's arguments seek to expand the universe of documents that are required to strictly comply with the terms of the mortgage—Such an expansion has been expressly rejected by the Supreme Judicial Court, and the Plaintiff's claims should therefore be rejected here. Further, this Court may enter judgment in favor

of the defendants where the Plaintiff cannot show damages that resulted from the mere receipt of the two letters, absent any foreclosure sale.

An alternative basis also exists to dismiss the Plaintiff's claims: This Court may dismiss Plaintiff's complaint in its entirety because its claims are not ripe where a foreclosure sale has not occurred, making the Plaintiff's claims merely speculative. On this basis, the Court may dismiss Counts II and III of the Plaintiff's complaint in their entirety and disregard much of the relief sought in Count I.

## **FACTUAL BACKGROUND & PROCEDURAL HISTORY**

### I. **Origination and Transfer of the Plaintiff's Loan**

On or about May 2, 2006, Plaintiff, borrowed $388,000.00 from Dream House Mortgage Corporation, as evidenced by a promissory note executed on that same date (the "Note"). (*See* Defendants' Statement of Material Facts ("SOMF"), ¶ 1.) To ensure repayment of these funds, Plaintiff executed a mortgage (the "Mortgage," together with the Note, the "Loan") on May 2, 2006, in favor of Mortgage Electronic Registrations Systems, Inc. ("MERS") encumbering the real property located at 42 Plain Drive, Stoughton, Massachusetts (the "Property"). (*See* SOMF, ¶ 2.) The Mortgage was recorded with the Norfolk County Registry of Deeds (the "Registry") on May 2, 2006 in Book 23637, Page 46. (*See* SOMF, ¶ 3.)

On or about May 4, 2006, MERS executed an Assignment of Mortgage transferring the Mortgage to Option One Mortgage Corporation ("Option One"). (*See* SOMF, ¶ 4.) This assignment was recorded with the Registry on June 19, 2007 in Book 24907, Page 452. (*See id*.) On May 25, 2012, Option One executed an Assignment of Mortgage transferring the Mortgage to U.S. Bank National Association, as Trustee, Successor in Interest to Bank of America, National Association, as Trustee, Successor by Merger to LaSalle Bank National Association As Trustee

for Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certifies, Series 2007-RP4 ("U.S. Bank as Trustee"). (*See* SOMF, ¶ 5.) This assignment was recorded with the Registry on June 20, 2012 in Book 30095, Page 490. (*See id*.) On March 22, 2013, U.S. Bank as Trustee executed a Corrective Assignment of Mortgage to clarify the name of the investor, and this Corrective Assignment was recorded on April 10, 2013 in Book 31221, Page 432. (*See* SOMF, ¶ 6.) On November 19, 2018, a judgment of the Norfolk Superior Court was recorded with the Registry in Book 36464, Page 518 declaring that the Mortgage was assigned to U.S. Bank as Trustee. (*See* SOMF, ¶ 7.)

### II. The Mortgage Provision at Issue

Paragraph 22 of the Mortgage states, in pertinent part, as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Agreement…The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law.

(*See* SOMF, ¶ 8.)

### III. Plaintiff's Default and the Notices Sent to Her

The Plaintiff defaulted on the Loan by, *inter alia*, failing to make all monthly payments when due—She is currently due for her November 2015 mortgage payment and all subsequent payments. (*See* SOMF, ¶ 9.)

3

1041173\310767665.v1

On or about December 17, 2018, PHH Mortgage Corporation ("PHH")[1], loan servicer for U.S. Bank as Trustee, sent the Plaintiff a letter on behalf of U.S. Bank as Trustee pursuant to M.G.L. c. 244, § 35A ("Section 35A") entitled "90-Day Right to Cure Your Mortgage Default" ("90-Day Right to Cure"). (*See* SOMF, ¶ 10.) As is relevant to the present action, this letter states that the Plaintiff was required to pay the past-due amount of $72,368.51 on or before March 24, 2019, 90 days after the letter was sent. (*See* SOMF, ¶ 11.) The letter also listed all of the monthly loan payments that Plaintiff failed to make, as well as all escrow amounts that were unpaid.(*See id.*) The letter further states, "If your payment is not accepted or your payment is for less than the total amount due (which we may accept without waiving any of our rights), this matter will not be resolved." (*See id.*)

On or about October 2, 2019, PHH's foreclosure counsel, Orlans P.C. ("Orlans") sent the Plaintiff a letter stating that Orlans had been retained to represent PHH with respect to the Loan. (*See* SOMF, ¶ 12.) The letter advised Plaintiff that her Loan was in default, that her Mortgage Loan had been accelerated, and that it was providing a statement of the amount owed. (*See* SOMF, ¶ 13.) Of significance to this action, the letter further states, "[y]ou may have the right to reinstate the Mortgage Loan by paying all past due installments, late charges, delinquent taxes, insurance premiums, and costs and fees incurred in the foreclosure." (*See id.*) Enclosed with the letter was a document entitled Notice of Debt Pursuant to 15 U.S.C. §1692, which further stated the total amount of the debt, advised the Plaintiff to contact PHH for an updated payoff amount if needed, identified U.S. Bank as Trustee as the creditor, explained that Plaintiff had thirty days to dispute the validity of the debt as well as how to do so. (*See* SOMF, ¶ 14.)

---

[1] PHH was formerly known as Ocwen Loan Servicing, LLC. For the sake of clarity, the term "PHH" is used to refer to these two entities throughout.

While U.S. Bank as Trustee took initial steps to conduct a foreclosure sale of the Property, no such foreclosure sale has been conducted to date. (*See* SOMF, ¶ 15.) At no time since November 2015 did the Plaintiff have sufficient funds pay the accelerated balance due on the Loan. (*See* SOMF, ¶ 16.)

### IV.     The Current Action

On or about March 24, 2021, the Plaintiff filed a complaint in Norfolk Superior Court, captioned *Lanier v. PHH Mortgage Corporation, et al.*, C.A. No. 2182CV00263 (the "Complaint"). (*See* SOMF, ¶ 17.) In the Complaint, the Plaintiff argues that the pre-foreclosure notices fail to strictly comply with the requirements of the mortgage and Massachusetts law. (*See* SOMF, ¶ 18.) The Complaint named both PHH and U.S. Bank as Trustee as defendants. (*See* SOMF, ¶ 19.) Specifically, the complaint seeks a Declaratory Judgment that the pre-foreclosure notices and any subsequent foreclosure are null and void (Count I), alleges violation of the Power of Sale (Count II) and Breach of Contract (Count III). (*See* SOMF, ¶ 20.) The Defendants timely removed the Complaint to this Court, on or about April 26, 2021. (*See* SOMF, ¶ 21.)

The Plaintiff complains that the statement in the December 17, 2018 Notice of Right to Cure— that she could "still avoid foreclosure by paying the total past due amount before a foreclosure sale takes place"—was contradicted and watered down by the statement on p. 3, "[i]f your payment is not accepted or your payment is for less than the total amount due…this matter will not be resolved." (*See* SOMF, ¶ 22.) The Plaintiff further claims that an acceleration notice stating that the borrower "may have the right to reinstate the Mortgage" is not in strict compliance with the Mortgage's requirements. (*See* SOMF, ¶ 23.)

5

In response to the Defendants' discovery requests, the Plaintiff stated that she is seeking $1,500,000.00 in damages[2]. (*See* SOMF, ¶ 24.) She bases this amount on her emotional injuries, which she states began on or about August 21, 2020. (*See* SOMF, ¶ 25.)

## ARGUMENT

### I. Legal Standard

Summary judgment is the process by which a court can "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Acosta v. Ames Dep't Stores, Inc.*, 386 F.3d 5, 7 (1st Cir. 2004) (internal quotation marks omitted). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also BAE Sys. Info. & Elec. Sys. Integration, Inc. v. Spacekey Components, Inc.*, 752 F.3d 72, 75 (1st Cir. 2014).

Once the moving party has alleged the absence of a triable issue of material fact, the burden shifts to the opposing party to establish at least one question of fact that is both genuine and material. *Mottolo v. Fireman's Fund Ins. Co.*, 43 F.3d 723, 725 (1st Cir. 1995). "An issue is 'genuine' if it can 'be resolved in favor of either party,' and a fact is 'material' if it 'has the potential of affecting the outcome of the case.'" *Perez-Cordero v. Wal-Mart Puerto Rico, Inc.*, 656 F.3d 19, 25 (1st Cir. 2011) (quoting *Calero-Cerzo v. U.S. Dep't of Justice*, 353 F.3d 6, 19 (1st Cir. 2004)). Summary judgment should be granted unless the Court determines that the record is "sufficiently open-ended to permit a rational fact finder to resolve a material factual dispute in favor of either side." *Pierce v. Cotuit Fire Dist.*, 741 F.3d 295, 301 (1st Cir. 2014).

---

[2] In her original Civil Cover Sheet filed in the Superior Court, the Plaintiff stated that she was seeking damages in the amount of $500,000.00. When asked about this discrepancy during her deposition, she could not explain it.

## II. The Defendants are Entitled to Summary Judgment Where the Two Notices at Issue Do Not Require Strict Compliance

Judgment should enter in favor of the Defendants on all counts of the Complaint where the record before this Court and black-letter Massachusetts law make clear that the notices at issue in the Complaint are not required to strictly comply with the terms of the Mortgage, and therefore cannot prevent foreclosure of the Property.

Massachusetts is a "non-judicial foreclosure state," where a mortgagee is permitted to foreclose on a mortgaged property without judicial authorization, so long as the mortgage instrument grants that right by reference to the statutory power of sale. *See Pinti v. Emigrant Mortgage Company, Inc.*, 472 Mass. 226, 232, 33 N.E. 3d 1213 (2015), citing *U.S. Bank Nat'l Ass'n v. Ibanez*, 458 Mass. 637, 645-646, 941 N.E.2d 40 (2011); G. L. c. 183, § 21. *See also Federal National Mortgage Association v. Marroquin*, 477 Mass. 82, 74 N.E.3d 592 (2017) (applying holding of *Pinti* to cases which were pending in the Housing Court at the time *Pinti* was decided and where a litigant had raised a *Pinti*-based argument). A foreclosing mortgagee, however, "first [must] comply[ ] with the terms of the mortgage and with the statutes relating to the foreclosure of mortgages by the exercise of a power of sale." G. L. c. 183, § 21. Because of the "substantial power … to foreclose in Massachusetts without judicial oversight," courts have emphasized that "one who sells under a power [of sale] must follow strictly its terms; the failure to do so results in no valid execution of the power, and the sale is wholly void." *Marroquin*, 477 Mass. at 86, quoting *Pinti*, 472 Mass. at 232-233.

The Supreme Judicial Court ("SJC") has held that strict compliance does not require a mortgagee to "demonstrate punctilious performance of every single mortgage term." *Pinti*, 472 Mass. at 235. Rather, the SJC has concluded that a foreclosing mortgagee must strictly comply "with the terms of the actual power of sale in the mortgage [and] with any conditions precedent to

7

the exercise of the power that the mortgage might contain." *Id.* at 233-234 (collecting cases). In *Pinti*, the SJC made clear that a "condition precedent" includes "(1) terms directly concerned with the foreclosure sale authorized by the power of sale in the mortgage, and (2) those prescribing actions the mortgagee must take in connection with the foreclosure sale — whether before or after the sale takes place." *Id*.

First, the 90 Day Right to Cure letter that the Plaintiff disputes, was sent pursuant to M.G.L. c. 244 Section 35A, is not a part of the foreclosure itself, does not concern utilization of the power of sale, and thus, strict compliance with the Mortgage is not required.[3] This question was addressed head-on by the SJC in *U.S. Bank Nat'l Ass'n v. Schumacher*, 467 Mass. 421, 5 N.E. 3d 882 (2014). In that case, which began its existence as a summary process action, the borrower argued that the foreclosure of his property was unlawful because of alleged deficiencies in the notice of his statutory right to cure provided to him under Chapter 35A. *See Schumacher*, 467 Mass. 426-27. In ruling on the borrower's claim, the SJC considered whether Section 35A was a statute "relating to the foreclosure of mortgages" such that strict compliance was required. *See id* at 430. The SJC concluded that the foreclosure of a mortgage "in the natural and common usage of the words means a termination of all rights of the mortgagor or his grantee in the property covered by the mortgage" whereas Section 35A serves a different purpose in that it "is designed to give a mortgagor a fair opportunity to cure a default *before the debt is accelerated and before the foreclosure process is commenced* through invocation of the power of sale." *Id.* at 430-31 (emphasis added). This

---

[3] Pursuant to Section 35A, "Any mortgagor of residential real property located in the commonwealth, shall have a 90–day right to cure a default of a required payment as provided in such residential mortgage or note secured by such residential real property by full payment of all amounts that are due without acceleration of the maturity of the unpaid balance of such mortgage. The right to cure a default of a required payment shall be granted once during any 5–year period, regardless of the mortgage holder." The statute further provides that notice of the right to cure must be given to the borrower. *See* M.G.L. c. 244, § 35A.

8

decision makes clear that Section 35A comes into play *prior to* the foreclosure process and thus is not an intrinsic part of it. Because strict compliance was not required with respect to the right to cure notice sent pursuant to Section 35A, the borrower was precluded from raising issues of alleged non-compliance with such notice to challenge the foreclosure. *See id* at 422.

This logic was reaffirmed by the Supreme Judicial Court in *Thompson v. JPMorgan Chase Bank, N.A.*, 486 Mass. 286, 158 N.E. 3d 35 (2020). In *Thompson*, in a certified question from the United States Court of Appeals for the First Circuit, the Supreme Judicial Court was asked to determine whether a foreclosure was rendered invalid by the foreclosing mortgagee's sending the borrowers the form of notice required by Section 35A, informing the borrowers of their right to avoid foreclosure by paying the past due amount before a foreclosure sale takes place, when the terms of the borrowers' mortgage provided that they could reinstate their mortgage by paying the past due amount five days before the foreclosure sale. The *Thompson* court concluded that "the more generous reinstatement period provided under G. L. c. 244, § 35A, governs over the contractually imposed time limits on reinstatement articulated in" the borrowers' mortgage. 486 Mass. at 293. Of note, *Thompson* approvingly cited *Schumacher* for the proposition that not all aspects of the regulatory scheme surrounding foreclosure require strict compliance before a valid foreclosure may take place. *See Thompson*, 486 Mass. at 292.

Based on the black-letter law as articulated in *Schumacher* and *Thompson*, the 90-Day Right to Cure letter at issue here, which was sent pursuant to Section 35A, is not part of the foreclosure process. Thus, Plaintiff's challenge to its contents does not raise an issue of material fact as to U.S. Bank as Trustee's standing and authority to foreclose.

Further, the *Thompson* decision concerned a so-called "hybrid notice" sent pursuant to both Chapter 35A and Paragraph 22. *See* 486 Mass. at 292-93. The 90-Day Right to Cure is not a hybrid

notice—It was sent solely pursuant to Chapter 35A and does not implicate Paragraph 22 in any way. This is further support for the conclusion that strict compliance does not apply to its contents.

The Plaintiff also points to alleged errors in the October 2, 2019 letter from Orlans, which she calls an "acceleration notice." As an initial matter, the record does not support the inference that the October 2, 2019 letter is such an acceleration notice. The plain text of this letter states that Orlans has been retained to represent U.S. Bank as Trustee with respect to the Loan. (*See* Manganaro Aff, Ex. G.) The letter also provides additional information concerning debt validation, pursuant to 15 U.S.C. 1692g.[4] (*See id*.) It is therefore clear that this letter was sent pursuant to Orlans' statutory responsibility with respect to the collect of a debt, and not pursuant to Paragraph 22 of the Mortgage.

The same logic utilized by the Supreme Judicial Court in *Schumacher* and *Thompson* applies here—The October 2, 2019 Orlans letter was sent pursuant to a statute that precedes the foreclosure process and is not expressly part of the Mortgage or the foreclosure process. Rather, the purpose of 15 U.S.C. 1692g is to give consumers knowledge of the alleged debt and the opportunity to contest the validity of the debt. This necessarily comes prior to the foreclosure process, as a consumer who is successfully able to dispute a debt will not be subject to foreclosure,

---

[4] **Notice of debt; contents.** Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
(1) the amount of the debt;
(2) the name of the creditor to whom the debt is owed;
(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. 1692g(a).

and it is therefore not "directly concerned with the foreclosure sale authorized by the power of sale in the mortgage." *Pinti*, 472 Mass. at 233-34. It also does not prescribe "actions the mortgagee must take in connection with the foreclosure sale." *Id.* It is self-evident that the October 2, 2019 Orlans letter does not require strict compliance with the terms of the Mortgage, and the Plaintiff therefore cannot argue that its contents constitute any error by the Defendants.

The critical defect with Plaintiff's allegations in the Complaint is that she seeks to expand the universe of documents that are part of the foreclosure process and to which strict compliance with the Mortgage is required. There is no support for the position that <u>every</u> document sent prior to a foreclosure sale must strictly comply with the terms of the Mortgage. Indeed, *Schumacher* and *Thompson* establish with authority that pre-foreclosure notices which are required by other statutes, and are not required pursuant to the Mortgage itself, are not part of the strict compliance regime. This is the case here. Accordingly, the Defendants are entitled to judgment in their favor on all counts of the Complaint.

**III.** **Even if the 90-Day Right to Cure Letter Were Subject to Strict Compliance, it is Not Misleading and Provides Accurate and Important Information to the Borrower**

Even if the 90-Day Right to Cure letter were subject to the strict compliance regime, the Plaintiff's assertion that this letter is contradictory or confusing is false. The Plaintiff challenges the language in the 90-Day Right to Cure letter stating that, while the Plaintiff can avoid foreclosure by paying the total past-due amount prior to a foreclosure sale, "If your payment is not accepted or your payment is for less than the total amount due… this matter will not be resolved." (Compl., ¶¶ 22-23.) Contrary to the Plaintiff's assertion, this language is not unnecessary or contradictory, because it is plainly true—If a borrower pays the total amount due prior to a foreclosure sale, foreclosure can be avoided; however, if that same borrower fails to pay the total

amount due (that is, if the payment is short), foreclosure will not be avoided. This is important information for a borrower to understand in order to exercise their right to cure the default, if they are able to do so. During her deposition, the Plaintiff could not identify precisely what about the language in the 90-Day Right to Cure letter confused her (*see* Manganaro Aff., Ex. H, 33:22-34:9), and, indeed, there is no error in the language of the 90-Day Right to Cure letter.

**IV.     The Defendants are Entitled to Judgment in Their Favor Because Plaintiff Has No Damages Resulting from the Two Notices at Issue**

There is also no question of material fact supporting the Plaintiff's assertion that she was damaged by the two notices at issue in the Complaint. Instead, the undisputed facts before this Court show that (i) the Defendants did not breach the terms of the Mortgage in relation to the two notices at issue, and (ii) any damages allegedly suffered by Plaintiff are not fairly attributable to the two letters she received several years before any alleged emotional distress began.

First, there was no breach of the terms of the Mortgage. As described above, the Defendants did not breach the terms of the Mortgage, as the 90-Day Right to Cure letter and the October 2, 2019 Orlans letter did not require strict compliance with the terms of the Mortgage.

Second, the summary judgment record before this Court establishes that Plaintiff cannot show that any damages she claims to have suffered were fairly attributable to two letters she received in 2018 and 2019. When asked in her deposition how she arrived at a figure of $1,500,000.00 for the damages she sought in this action, the Plaintiff testified, "I came to that number because of everything I was experiencing at that time…" (*See* Manganaro Aff, Ex. H, 21:23-22:7.) When pressed further on how she calculated her damages, the Plaintiff testified, that "all of it" was attributable to emotional distress allegedly suffered because of the 90-Day Right to Cure letter and the October 2, 2019 Orlans letter. (*See* Manganaro Aff., Ex. H, 53:24-54:7.) In her written discovery responses, however, the Plaintiff stated that her emotional injuries began on or

about August 21, 2020. (*See* Manganaro Aff., Ex. I.) In other words, the Plaintiff claims that the letters received in 2018 and 2019 were so confusing and distressing to her that she developed injuries stemming from them, yet it was not until several years later. Instead, the unavoidable conclusion from the Plaintiff's testimony is that she was distressed by the underlying financial condition that led to her default, as opposed to any correspondence received. This Court has recognized that "[w]hile home foreclosure is a terrible event and likely fraught with unique emotions and angst, foreclosures, even ones that may involve improper conduct, do not readily go beyond all possible bounds of decency." *Koufos v. U.S. Bank, N.A.*, 939 F. Supp. 2d 40, 53 (D. Mass. 2013).

Further, Plaintiff stated both in her response to the Defendants' written discovery and during her deposition that in December 2018 and in October 2019, she lacked the funds sufficient to cure her default. (*See* Manganaro Aff., Ex. H, 42:11-19; Manganaro Aff., Ex. J.) The Plaintiff will therefore not be able to show that she was damaged by the language in the December 27, 2018 90-Day Right to Cure letter and the October 2, 2019 Orlans letter that she alleges to be confusing or otherwise injurious to her rights. In other words, no matter what the letters said in December 2018 and October 2019, the Plaintiff could not have cured her default. Therefore, she is in the same place with respect to the Loan as she would have been, irrespective of the language used in the letters.

Plaintiff's inability to show damages resulting from the two notices at issue is fatal to all three counts of her Complaint. As Plaintiff testified in her deposition, she attributes "all of" the damages she seeks in this action to the alleged emotional distress she claims to have suffered at the mere fact of receiving two letters. Because the record makes clear that she cannot establish a

causal link between the correspondence at issue and her claimed injuries, Plaintiff cannot prevail on her claims.

## V. In the Alternative, the Complaint Should be Dismissed as Plaintiff's Claims are Not Ripe Because No Foreclosure Sale Has Taken Place

As an alternative to the arguments above, the Defendants submit that this Court could resolve this matter on another basis: The Complaint may be dismissed in its entirety because no foreclosure sale of the Property has been conducted and the Plaintiff's allegations are therefore not ripe for review by this Court.[5]

The ripeness doctrine is intended "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *McInnis-Misenor v. Maine Med. Ctr.*, 319 F.3d 63, 70 (1st Cir. 2003), quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148, 87 S. Ct. 1507, 18 L. Ed. 2d 681 (1967). Courts apply a two-prong test to determine whether an issue is ripe for adjudication. The Court must look to (i) the fitness of the issue for judicial decision; and (ii) the extent to which withholding judgment will impose hardship on the parties. *Roman Catholic Bishop of Springfield v. City of Springfield*, 724 F.3d 78, 89 (1st Cir. 2013). The first prong focusses on "subsidiary queries concerning finality, definiteness, and the extent to which resolution of the challenge depends upon facts that may not yet be sufficiently developed." *Ernst & Young v. Depositors Economic Protection Corp.*, 45 F.3d 530, 535 (1st Cir. 1995). In assessing hardship, this Court asks "whether granting relief would serve a useful purpose, or, put another

---

[5] While the Defendants did not file a motion pursuant to Rule 12 earlier in this litigation, this Court may nonetheless dismiss the complaint now based on lack of ripeness. Article III's case or controversy requirement and the limitations it places on federal courts' subject matter jurisdiction embody the doctrines of standing, ripeness, and mootness. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352, 126 S. Ct. 1854, 164 L. Ed. 2d 589 (2006). The First Circuit has written that "lack of subject matter jurisdiction can be noticed at any time and cannot be waived." *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 632 F.3d 762, 767 (1st Cir. 2011); *see also Mach. Project, Inc. v. Pan Am. World Airways, Inc.*, 199 F. Supp. 3d 382, 386 (D. Mass. 2016) (citing *Aversa v. United States*, 99 F.3d 1200, 1209 (1st Cir. 1996)) (holding that a challenge to the existence of federal subject matter jurisdiction "may be raised at any point during the litigation").

way, whether the sought-after declaration would be of practical assistance in setting the underlying controversy to rest." *Verizon New England, Inc. v. International Bhd. of Elec. Workers, Local 2322*, 651 F.3d 176, 188 (1st Cir. 2011) (citations omitted). "Perhaps the most important consideration in determining whether a claim is ripe for adjudication is the extent to which the claim involves uncertain and contingent events that may not occur as anticipated, or indeed may not occur at all." *Lincoln House, Inc. v. Dupre*, 903 F. 2d 845, 847 (1st. Cir. 1990) (internal citations omitted).

Here, the Plaintiff's claims are premature because there has been no foreclosure of the Property. The first prong of the ripeness inquiry shows that each count must be dismissed. In Count I, the Plaintiff seeks a declaration that the Right to Cure Notice and the letter from Orlans failed to strictly comply with Paragraph 22 of the Mortgage. Compl. p. 9-10. As explained in detail above, these notices are not required to strictly comply with the Mortgage, however in any event a declaration may not be granted as to these notices at this early stage. If U.S. Bank as Trustee had conducted a foreclosure sale without strictly complying with all conditions precedent, an aggrieved borrower could file suit and have the foreclosure sale invalidated. *Pinti v. Emigrant Mortgage Company, Inc.*, 472 Mass. 226, 241-42, 33 N.E. 3d 1213 (2015). Where there has been no foreclosure sale, there is no comparable remedy that this Court can provide. While the Complaint seeks damages associated with "wrongful foreclosure," Compl. ¶¶ 39, 40, the record is undisputed that no foreclosure sale at all has taken place. (*See* SOMF, ¶ 15.) As such, the Plaintiff's request for a declaration concerning the two notices at issue amounts to asking the Court to weigh in on a hypothetical disagreement. Thus, Count I—to the extent it alleges wrongful foreclosure and seeks a declaration to that effect—is not ripe for decision by this Court. *See Verizon New Eng., Inc. v.*

*IBEW*, 651 F.3d 176, 188 (1st Cir. 2011) ("Requests for a declaratory judgment may not be granted unless they arise in a context of a controversy 'ripe' for judicial resolution.")

Count II can be even more readily dispatched—There, the Plaintiff alleges that the Defendants failed to comply with the necessary preconditions to exercise the power of sale. Compl. p. 10-15. This argument is entirely hypothetical where U.S. Bank as Trustee has not yet exercised the power of sale <u>at all</u>. The Complaint alleges that, due to the alleged failure to comply with Paragraph 22 of the Mortgage, "no entity was contractually authorized to exercise the statutory power of sale and foreclose on the Mortgage and sell the subject property at mortgagee's foreclosure sale." Compl. ¶ 55. This allegation is an ideal crystallization of why the Complaint is premature—The Plaintiff complains of a foreclosure sale that has not yet occurred. Count II, at bottom, is a wrongful foreclosure claim, and it is axiomatic that a wrongful foreclosure claim cannot lie where there has been no foreclosure at all. See *Worrall v. Fed. Nat'l Mortg. Ass'n*, No. 13-cv-330-JD, 2013 U.S. Dist. LEXIS 165017, 2013 WL 6095119, at *3 (D.N.H. Nov. 20, 2013) ("[A] necessary element of a wrongful foreclosure claim, as the claim suggests, is that a foreclosure sale must have occurred.") On these facts, Count II is not ripe for adjudication.

As to Count III, which alleges a breach of contract, this claim too cannot be adjudicated at this early stage. U.S. Bank as Trustee, if necessary, could issue new pre-foreclosures notice at any time, and, indeed, there is nothing in the Mortgage that would prevent U.S. Bank as Trustee from doing so. Thus, each notice cannot, in and of itself, constitute a breach, absent a foreclosure sale. Rather, in order for the Plaintiff to claim that the Defendants foreclosed without providing the valid notice required by the Mortgage, a foreclosure sale must occur. Without one, the Plaintiff is asking this Court to find a breach where the event of breach has not taken place. This claim is not ripe under controlling Massachusetts law. *See Citizens for a safe Chatham Airport v. Chatham*,

1041173\310767665.v1

19-P-1435, 2021 Mass. App. Unpub. 187, at *5 (Mar. 15, 2021) ("[T]he ripeness doctrine requires us to ask whether the alleged injury has matured such that it is no longer hypothetical or speculative."), citing *Bridgeman v. District Attorney for the Suffolk Dist.*, 471 Mass. 465, 474, 30 N.E.3d 806 (2015). In addition, Massachusetts law does not recognize a cause of action for anticipatory breach, namely a breach of a duty that is expected but has not occurred. *See Cavanagh v. Cavanagh*, 33 Mass. App. Ct. 240, 243 (1992) ("Massachusetts has not generally recognized the doctrine of anticipatory repudiation, which permits a party to a contract to bring an action for damages prior to the time performance is due if the other party repudiates."), *review denied*, 413 Mass. 1107 (1992); *see also Carrig v. Gilbert-Varker Corp.*, 314 Mass. 351, 355-56 (1943). Thus, the Plaintiff's purported breach of contract claim should be dismissed, as it is not yet ripe.

As to the second prong of the ripeness inquiry, there will be no harm to the Plaintiff if review is denied. It is undisputed that the Plaintiff has not made a mortgage payment since October 2015. (*See* SOMF, ¶ 9.) If the Complaint is dismissed and the Plaintiff is required to wait until a foreclosure takes place before perfecting her claims, she will continue residing at the Property without making her monthly payments, which can hardly be classified as damaging to the Plaintiff.

Based on the foregoing, the Complaint may also be dismissed for lack of ripeness where no foreclosure sale of the Property has been conducted.

## **CONCLUSION**

Based on the foregoing facts and authorities, Defendants, PHH Mortgage Corporation and U.S. Bank National Association, as Trustee, Successor in Interest to Bank of America, National Association, as Trustee, Successor by Merger to LaSalle Bank National Association As Trustee for Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certifies, Series 2007-RP4 move this Court to enter judgment in their favor on all counts of the complaint

17

filed by Plaintiff, Lakeatha Lanier with prejudice. In the alternative, the Defendants move this Court to dismiss the complaint for lack of ripeness.

Respectfully submitted,

PHH MORTGAGE CORP., U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, SUCCESSOR IN INTEREST TO BANK OF AMERICA, NATIONAL ASSOCIATION, AS TRUSTEE, SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR RESIDENTIAL ASSET MORTGAGE PRODUCTS, INC., MORTGAGE ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2007-RP4

By: Their Attorneys

*/s/ Kevin W. Manganaro*
Maura K. McKelvey, BBO #600760
Kevin W. Manganaro, BBO #690082
HINSHAW & CULBERTSON LLP
53 State Street, 27th Floor
Boston, MA 02109
Phone: 617-213-7000
Fax: 617-213-7001 (facsimile)
E-mail: mmckelvey@hinshawlaw.com
        kmanganaro@hinshawlaw.com

Dated:     June 6, 2022

## CERTIFICATE OF SERVICE

I, Kevin W. Manganaro, hereby certify that the documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Kevin W. Manganaro*
Kevin W. Manganaro
